FILED
2013 Jan-18  PM 12:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DEBORAH JUNELL, an individual,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.:** |
| | ) | |
| **ASSET ACCEPTANCE, LLC, a corporation;** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, by and through counsel, and for Plaintiff's Complaint against the Defendant states as follows:

1.  This action arises out of Defendant's repeated violations of the Fair Debt Collection Practices Act[1] (15 U.S.C. § 1692 et seq. [hereinafter "FDCPA"]), out of state law violations and out of the invasion of Plaintiff's personal and financial privacy by the Defendant and its agents in its illegal efforts to collect a consumer debt from Plaintiff.

2.  The Plaintiff was sued for a debt Plaintiff did not owe.

3.  Defendant Asset Acceptance, LLC never had any intention of offering any proof at trial.

---

[1] Any reference the FDCPA or any part thereof encompasses all relevant parts and subparts thereto.

4.    Instead, the lawsuit against Plaintiff was filed in a hope of obtaining a default judgment or coercing Plaintiff into paying on a debt she did not owe.

5.    This is the pattern of collection activity by Defendant Asset Acceptance, LLC in its collection lawsuits in Alabama.

6.    The Plaintiff won the lawsuit.

## JURISDICTION

7.    Personal jurisdiction exists over Defendant as it has the necessary minimum contacts with the State of Alabama and this suit arises out of its specific conduct with Plaintiff in Alabama.   All the actions described in this suit occurred in Alabama.

8.    Subject matter jurisdiction exists under federal question jurisdiction (28 U.S.C. Section 1331) and through diversity jurisdiction (28 U.S.C. Section 1332) as the amount claimed exceeds $75,000.00 between these diverse parties.

## VENUE

9.    Venue is proper as Plaintiff lives in this judicial district, the events took place in this judicial district, and the Defendant does business in this judicial district.

## PARTIES

10. Plaintiff Deborah Junell (hereinafter "Plaintiff") is a natural person who is a resident of this judicial district in Alabama, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

11. Defendant Asset Acceptance, LLC, ("Defendant" or "Asset[2]") is a foreign debt collection firm that engages in the business of debt collection in this judicial district in Alabama.  It is a "debt collector" under the FDCPA.  It is incorporated in Delaware and has its principal place of business in Michigan.

12. Defendant Asset, upon information and belief, allegedly buys defaulted consumer debt.

## BACKGROUND INFORMATION ON DEBT BUYER LAWSUITS  BY ASSET IN ALABAMA

13. This case represents a growing trend in the debt collection and credit reporting industries.

14. First, a debt buyer such as Asset which claims to buy the Plaintiff's debt for pennies on the dollar will sue the Plaintiff in small claims or district court.

15. While the debt buyer will claim that it has accurate records, this is not true.

---

[2] "Asset" means Asset directly or through its debt collectors, employees and agents and the collection law firm that sued Plaintiff, credit reported against Plaintiff, or otherwise took any collection action against Plaintiff.

16.   The purchase agreement between the original creditor and the first debt buyer will state that there is no promise or representation as to the accuracy of the information sold to the first debt buyer.

17.   That first debt buyer cannot represent any greater quality to any subsequent debt buyer.

18.   In any event, one of the debt buyers, in this case Asset, will sue the Alabama consumer.

19.   Asset will hire a collection law firm to file the suit.

20.   Generally, most consumers default as they assume if a lawsuit has been filed, it must be legitimate.

21.   Occasionally, however, the consumer will file an answer and deny owing money.

22.   The reason is that Asset knows that in virtually every case it will be unable (or unwilling) to prove that the consumer owes this debt to Asset.

23.   The debt buyer Asset has no intention of proving its case.

24.   No witness will be provided by Asset.

25.   No admissible evidence will be presented in court.

26.   The entire model is based upon filing a high volume of cases, obtaining default judgments, and never having to make any effort to prove the allegations of the lawsuit.

27. When resistance is provided, such as an attorney defending a consumer, Asset knows the case will be lost as it has no evidence, no witness, and no intention of proving the case.

28. This is a reality that Asset prefers to keep secret from consumers in Alabama.

29. The case gets set for trial.

30. The judge rules in favor of the consumer at the trial as Asset offered no evidence.

31. Asset has 14 days to appeal from an adverse judgment in Alabama Small Claims or Alabama District Court.

32. Asset does not appeal.

33. Asset knows that losing its case means under Alabama law that the debt is not owed by the consumer to the debt buyer.

34. Since the debt is not owed, collection efforts must cease.

35. Since the debt is not owed, false credit reporting has occurred by Asset.

36. The factual allegations above relate directly to Asset concerning the filing of the lawsuit by Defendant Asset, its lack of any intent or ability to prove its case against Plaintiff who does not owe Defendant Asset any money on this account, and Defendant Asset's collection activities against Plaintiff.

## RECOGNITION OF THE WIDESPREAD ABUSE BY COLLECTORS

37.   Congress found it necessary to pass the FDCPA due to rampant abusive practices by dishonorable debt collectors.

38.   Congress recognized that there are four social ills caused by abusive debt collection:  (1) Unnecessary personal bankruptcies; (2) Marital instability; (3) Loss of jobs; and (4) Invasions of individual privacy.

39.   Congress also found that it is fundamentally unfair for the abusive collection agencies to have an unfair competitive advantage over those honorable debt collectors that decide to obey the law and follow the rules.

40.   15 USC § 1692 is entitled "Congressional findings and declaration of purpose" and it states as follows:

    (a)    There is **abundant evidence** of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

    (b)    Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

    (c)    **Means other than** misrepresentation or other **abusive debt collection practices are available for the effective collection of debts.**

    (d)    Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

    (e)    It is the **purpose** of this title to **eliminate abusive debt collection practices** by debt collectors, to **insure that those debt collectors who refrain from using abusive debt collection**

6

**practices are not competitively disadvantaged,** and to promote consistent State action to protect consumers against debt collection abuses.

[Emphasis added].

## The Small Claims Complaint

41. On August 17, 2012, Defendant Asset sued Plaintiff Junell in the Small Claims Court of Shelby County, Alabama, with a case number of SM-2012-900894.

42. This suit was filed by the Zarzaur & Schwartz collection law firm.

43. In this suit, Defendant Asset asserted it was the owner of a certain debt allegedly owed by Plaintiff.

44. Defendant Asset alleged Plaintiff owed Asset $2,707.11.

45. The original creditor is listed as "CHASE BANK USA NA."

46. The suit has a warning to the Plaintiff Junell who was sued that if Plaintiff Junell failed to respond, a judgment may be entered against Plaintiff Junell and "ONCE A JUDGMENT HAS BEEN ENTERED AGAINST YOU, YOUR PAYCHECK CAN BE GARNISHED AND/OR **YOUR HOME OR PROPERTY SOLD** TO SATISFY THAT JUDGMENT."   [Emphasis added].

47. Defendant Asset also claimed court costs.

48. Defendant Asset knows that Plaintiff has never done business with Defendant Asset.

49. No mention was made in the lawsuit that whoever sold the alleged debt to Asset disclaimed the accuracy of the records.

50. Given this lawsuit, Defendant Asset would be expected to have an intention of proving its case.

51. No such intention existed.

52. Defendant Asset never intended to offer one shred of evidence to prove its case.

53. This lawsuit, and the dozens of other Alabama lawsuits filed by Asset every year, was filed with the intention of getting settlements from pro se consumers and default judgments on debts that Defendant Asset cannot and will not prove it has any right to collect on.

54. Another intention of Defendant Asset was to continue to allow the case to move towards trial with the intent that the Plaintiff would be intimidated into paying on a debt not owed and/or would not show up at trial and a default judgment would be entered.

55. Defendant Asset knew Plaintiff did not owe the debt sued on.

56. Defendant Asset made numerous misrepresentations and false statements in the lawsuit.

57.  Defendant Asset misrepresented that a debt was owed – none was owed by Plaintiff to Defendant Asset.

58.  Defendant Asset misrepresented the amount owed as Plaintiff owed Defendant Asset nothing on this account.

59.  Defendant Asset misrepresented that Defendant Asset had standing and the right to bring the lawsuit when Defendant Asset did not have standing and did not have the right to bring the lawsuit.

60.  Defendant Asset did not own the debt at the time the lawsuit was filed.

61.  Defendant Asset did not own the debt at any time the lawsuit was pending.

62.  Defendant Asset misrepresented that it intended to prove its case when Defendant Asset had no intent to prove its case.

63.  Defendant Asset misrepresented that it intended to offer any evidence in the case when Defendant Asset had no intention of offering any evidence in the case.

64.  This suit was brought as part of a strategy and policy of scattershot litigation designed to sue Alabama consumers who do not owe the debt to Defendant Asset in order to coerce or deceive the Alabama consumers into paying a debt not owed or to receive a judgment against the consumers.

### Plaintiff Answers The Asset Lawsuit

65.  Plaintiff did not and does not owe the debt.

9

66. Plaintiff filed an Answer denying the allegations of Defendant Asset.

67. The Answer was filed on August 27, 2012 by Plaintiff's attorney.

68. Defendant Asset received a copy of this denial.

69. Defendant Asset understood that Plaintiff was refusing to pay on this debt.

70. Defendant Asset understood that Plaintiff disputed this debt.

71. Defendant Asset knew Plaintiff did not owe this debt.

72. Defendant Asset made a conscious choice to continue to allow the lawsuit to move forward even though Defendant Asset knew that there was no merit to the case, but Defendant Asset sought to use the lawsuit and the court process to force Plaintiff to pay money on a debt Plaintiff did not owe to Defendant Asset.

### The Judge Sets The Asset Lawsuit For Trial

73. The state court set the case for trial.

74. Notice was sent to Defendant Asset and Plaintiff.

75. At all times Plaintiff was prepared for trial.

76. At all times Defendant Asset was unprepared for trial.

77. Defendant Asset knew that with its intention to never prove the case, and with a represented Plaintiff, the game was over.

78. Defendant Asset provided no proof to its collection counsel that Defendant Asset owned the debt.

79. Defendant Asset provided no proof to its collection counsel that Plaintiff owed Defendant Asset the debt.

80. Defendant Asset provided no evidence and no witness to its collection counsel at any time prior to the trial and up through the end of the trial.

### Asset Loses The Collection Case

81. On September 17, 2012,   District Court John H. Alsbrooks entered a judgment for Plaintiff Junell.

82. Defendant Asset offered no proof and never attempted to offer any proof that it was entitled to a verdict against Plaintiff.

83. As Defendant Asset supplied its collection counsel with no proof and no witnesses, Defendant Asset (through collection counsel) had no proof or evidence to even attempt to offer into evidence in the trial of this case.

84. Defendant Asset offered no testimony from any witness in this case.

85. Defendant Asset did not question Plaintiff at trial in this case.

86. Defendant Asset did not have at trial any employee or agent of Defendant Asset to present evidence or testimony.

87. Defendant Asset did not question any employee or agent of Defendant Asset at trial in this case.

88. Defendant Asset did not have any witness of any type to present evidence or testimony.

89. Defendant Asset did not question any witness at trial in this case.

90. Defendant Asset did not even attempt to submit any document into evidence at trial in this case.

91. No evidence of any type was submitted by Defendant Asset in the trial of this case.

92. The entire "trial" lasted a few seconds as Defendant Asset, bearing the burden of proof, had no evidence to even remotely support its claims.

93. Judge Alsbrooks ruled in favor of Plaintiff Junell.

94. This ended the case Defendant Asset filed against Plaintiff.

**Defendant Asset Falsely Credit Reports on Plaintiff's Credit**

95. Credit reporting by Defendant Asset occurred before, during, and after the collection lawsuit.

96. Defendant Asset knew, or should have known, that its credit reporting was false, violating 15 USC § 1692e(8) and state law.

97. Defendant Asset knew that Plaintiff did not owe Defendant Asset any money on this debt.

98. Defendant Asset knew that Defendant Asset did not own the debt being credit reported.

99. The reason for the false credit reporting was to force the Plaintiff into paying a debt not owed.

### Remaining Factual Allegations Against Defendant Asset

100.  Defendant Asset is not the owner of this alleged debt.

101.  Defendant Asset has collected against Plaintiff when Plaintiff did not owe any money to Defendant Asset on this account.

102.  Defendant Asset has misrepresented the debt to Plaintiff.

103.  This includes the amount of the debt as none is owed.

104.  This includes the legal status of the debt as none is owed.

105.  This includes the false statement that Defendant Asset intended to offer any proof in the case when it had no such intention.

106.  Defendant Asset has threatened to take action it knows is illegal for Defendant Asset to take.

107.  This includes proceeding to trial when Defendant Asset knew at the time and continues to know that it has  no right to proceed to trial on a debt it does not own and that Plaintiff does not owe.

108.  These collection activities include credit reporting.

109.  Defendant Asset knew that by its conduct described in this Complaint that the natural consequence – the desired consequence – would be that Plaintiff (and all others similarly situated) would be harassed, oppressed, and abused by the filing of a meritless lawsuit, the filing of a lawsuit on a debt not owed by Plaintiff, the filing of a lawsuit when Defendant Asset did not own the

debt, by false credit reporting, by misrepresenting numerous facts in the lawsuit, by threatening to take Plaintiff's property and wages, and by all other wrongful acts described in this Complaint.

110. Plaintiff did not and does not owe this money to Defendant Asset.

111. The debt being collected is a consumer debt as defined by the FDCPA.

112. Plaintiff is a "consumer" as defined by the FDCPA.

113. Defendant Asset is a "debt collector" as defined by the FDCPA.

114. Defendant Asset refused to give Plaintiff all required notifications and disclosures under the FDCPA.

115. Defendant Asset has been repeatedly sued in Alabama for filing suits with no basis to do so.

116. Defendant Asset has been repeatedly sued in Alabama for filing suits with no intention of proving the allegations in the lawsuits.

117. Defendant Asset has been repeatedly sued in Alabama for false credit reporting on debts not owed by Alabama consumers.

118. Defendant Asset has full knowledge of what it is doing by filing bogus lawsuits and illegal collection activities.

119. Defendant Asset knows that it is suing Alabama consumers who do not owe the debts being sued upon.

120.  Defendant Asset knows that it is suing Alabama consumers on debts that Defendant Asset does not own.

121.  Defendant Asset has calculated that the most profitable way to conduct these suits is to file them with no investigation on the merits of the suit, to provide no evidence to collection counsel, to provide no valid evidence for any court to consider, and to use deception and intimidation to force Alabama consumers to pay for debts not owed or to obtain default or consent judgments against the Alabama consumers.

122.  Defendant Asset files numerous lawsuits with no intention of proving those lawsuits.

123.  Defendant Asset is counting on the fact that many Alabama consumers will not answer and so default judgments will be entered.

124.  This type of "scattershot" litigation strategy is improper, deceptive, and abusive.

125.  Defendant Asset knows that its "scattershot litigation" is improper but it has decided that this is the most effective way to obtain money from Alabama consumers who do not owe the money to Defendant Asset.

126.  The conduct of the Defendant Asset has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit and

credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

127.  It is a practice of the Defendant Asset to maliciously, willfully, recklessly, wantonly and/or negligently ignore and refuse to follow the requirements of the FDCPA and state law.

128.  Defendant Asset knows its conduct is wrong but it has chosen to conduct itself in this wrongful manner as a matter of corporate policy.

129.  All actions taken by employees, agents, servants, or representatives of any type for the Defendant Asset were taken in the line and scope of such individuals' employment, agency or representation.

130.  This includes collection counsel for Defendant Asset who in all ways conducted themselves in the line and scope of their agency and representation of Defendant Asset.

131.  All actions taken by the Defendant Asset were done with malice, were done willfully, and were done with either the desire to harm Plaintiff and/or with the knowledge that their actions would very likely harm Plaintiff and/or that their actions were taken in violation of the FDCPA and/or state law and/or that they knew or should have known that its actions were in reckless disregard of the FDCPA and/or state law.

132. Defendant Asset has engaged in a pattern and practice of wrongful and unlawful behavior with respect to accounts and/or credit reports and as such Defendant Asset is subject to punitive damages and statutory damages and all other appropriate measures to punish and deter similar future conduct by this Defendant and similar companies.

133. Defendant Asset is liable to Plaintiff through the doctrine of Respondeat Superior for the wrongful, intentional and negligent acts, errors, and omissions done in violation of state and federal law by their collection employees and agents, including but not limited to violations of the FDCPA and Alabama tort law, in its attempts to collect this debt from Plaintiff.

## SUMMARY

134. All of the above-described collection activities made to Plaintiff by Defendant Asset were made in violation of the FDCPA, including (but not limited to) §§1692d, 1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(8), 1692e(10), 1692e(11), 1692f, 1692f(1), 1692f(6), and 1692g.

135. The above-detailed conduct by the Defendant Asset of harassing Plaintiff in an effort to collect this debt was also an invasion of Plaintiff's privacy and resulted in actual damages to the Plaintiff.

136. This series of abusive collection actions by Defendant Asset caused Plaintiff stress and anguish.

137. Defendant Asset's attempts to collect this debt from Plaintiff and refusal to stop violating the law is an invasion of Plaintiff's privacy and Plaintiff's right to be left alone.

138. Plaintiff has suffered actual damages as a result of these illegal actions by Defendant in the form of anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions, as well as suffering from unjustified and abusive invasions of personal privacy.

### NEGLIGENT AND WANTON HIRING AND SUPERVISION

139. Defendant Asset negligently and/or wantonly hired, retained, or supervised incompetent debt collectors and is thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

### CAUSES OF ACTION

### COUNT I.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692 et seq.

140. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

141. The acts and omissions of Defendant Asset constitute numerous and multiple violations of the FDCPA with respect to the Plaintiff, including (but not limited to) §§1692d, 1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(8), 1692e(10), 1692e(11), 1692f, 1692f(1), 1692f(6), and 1692g.

142.   As a result of Defendant Asset's violations of the FDCPA, Plaintiff is entitled to actual damages; statutory damages; and reasonable attorney's fees, expenses and costs from Defendant Asset.

## COUNT II.

## INVASION OF PRIVACY

143.   Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

144.   Alabama law recognizes Plaintiff's right to be free from invasions of privacy and Defendant Asset violated Alabama state law as described in this Complaint.

145.   Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy**.

15 U.S.C. § 1692(a) (emphasis added).

146.   Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions"

including debt collectors (albeit without a private right of action), when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

147.  Defendant Asset intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of the Plaintiff, namely, by repeatedly and unlawfully attempting to collect a debt and thereby invaded Plaintiff's privacy.

148.  Defendant Asset intentionally, recklessly, and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiff's right to privacy.

149.  Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs, and private financial information.

150.  The conduct of Defendant Asset, in engaging in the above-described illegal collection conduct against Plaintiff, resulted in multiple intrusions and invasions of privacy by Defendant Asset which occurred in a way that would be highly offensive to a reasonable person in that position.

151. This conduct includes the filing of a public lawsuit against Plaintiff.

152. A public lawsuit that has no merit and Defendant Asset knew at the time it filed the lawsuit that it had no merit.

153. Defendant Asset has continued to publicly state through credit reporting that Plaintiff owes or owed the debt to Defendant Asset when Defendant Asset knows this is untrue.

154. All of the other wrongful acts described in this Complaint demonstrate the wrongful scheme, plan, and design of Defendant Asset in its campaign of improper debt collection which has led to the Plaintiff's privacy being invaded.

155. As a result of such intrusions and invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from Defendant Asset.

156. All acts of Defendant Asset were committed with malice, intent, wantonness, and/or recklessness and as such Defendant Asset is subject to punitive damages.

## COUNT III.

## NEGLIGENT, WANTON, AND/OR INTENTIONAL HIRING AND SUPERVISION OF INCOMPETENT DEBT COLLECTORS

157. Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

158. Defendant Asset's collectors are allowed and encouraged to break the law in order to collect debts.

159. This includes all of the violations of the law described in this Complaint.

160. Defendant Asset is aware of the wrongful conduct of its collectors.

161. Defendant Asset negligently, wantonly, and/or intentionally hired, retained, or supervised incompetent debt collectors, who were allowed or encouraged to violate the law as was done to Plaintiff, and Defendant Asset is thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

## COUNT IV.

## WANTON, MALICIOUS, AND INTENTIONAL CONDUCT

162. All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

163. Defendant Asset had a duty, and assumed a duty, to treat Plaintiff fairly and with reasonable care.

164. Defendant Asset had a duty, and assumed a duty, to not unreasonably cause harm to Plaintiff.

165. Defendant Asset acted with malice, wantonness, recklessness, and/or intentional conduct in its dealings with and about Plaintiff as set forth in this Complaint.

166. Defendant Asset violated all of the duties Defendant Asset had and such violations were made intentionally, willfully, recklessly, maliciously, and wantonly.

167. It was foreseeable, and Defendant Asset did in fact foresee it, the actions of Defendant Asset would lead and did lead to the exact type of harm suffered by Plaintiff.

168. Defendant Asset acted with malice, wantonness, recklessness, and/or intentional conduct in their dealings with and about Plaintiff as set forth in this Complaint.

169. Defendant Asset invaded the privacy of Plaintiff as set forth in Alabama law.

170. Such malice, wantonness, recklessness, willfulness, and/or intentional conduct proximately caused the damages set forth in this complaint.

171. As a result of this conduct, action, and inaction of Defendant Asset, Plaintiff has suffered damages as set forth in this Complaint.

### COUNT V

### MALICIOUS PROSECUTION AND ABUSE OF PROCESS AGAINST DEFENDANT ASSET

172. All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

173. Defendant Asset instituted and continued prosecuting the lawsuit against Plaintiff with no reasonable basis to do so.

174. Defendant Asset filed the lawsuit with no intention of ever proving its case.

175. Defendant Asset continued to prosecute the case with no intention of ever proving its case.

176. Defendant Asset filed and used this case as a means of attempting to extort money out of Plaintiff or obtaining a default judgment against Plaintiff if Plaintiff did not answer the suit.

177. Defendant Asset instituted and continued prosecuting the lawsuit against Plaintiff with malice and with the design and plan that the lawsuit would result in an illegal judgment against the Plaintiff or would cause Plaintiff to pay Defendant Asset money on a non-existent debt.

178. The malicious plan of Defendant Asset included the knowledge that the fraudulent judgment would be devastating to Plaintiff's credit report and credit scores and would lead to garnishments and/or seizures of property and the Defendant Asset tried to accomplish this by the Defendant Asset's malicious and abusive actions.

179. Throughout the entire illegal lawsuit against Plaintiff, Defendant Asset knew at all times that there was no basis for the lawsuit and the intent and design of filing the lawsuit and continuing to prosecute the lawsuit was to extort money from the Plaintiff which Defendant Asset knew it was not entitled to receive.

180. The litigation against Plaintiff filed by Defendant Asset eventually resulted in adjudication in favor of Plaintiff.

181. The illegal and improper actions of the Defendant Asset constitute malicious prosecution and abuse of process.

182. This is the pattern and practice of Defendant Asset – to file suits with no basis and no intention of ever proving the case in an attempt to obtain default judgments against Alabama consumers or to obtain settlements from Alabama consumers who do not realize the bogus nature of the suit filed by Defendant Asset.

183. The Plaintiff suffered past and future emotional distress and monetary loss as a direct and proximate result of Defendant Asset's abuse of process and malicious prosecution.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays that judgment be entered against Defendant for all damages allowable (including statutory, actual, compensatory, nominal and punitive the total of which Plaintiff claims more than $75,000.00), costs, expenses, fees, injunctive relief to prevent further violations, and for such other and further relief as may be just and proper.

Respectfully Submitted,

_____

**John G. Watts (ASB-5819-t82j)**
**M. Stan Herring (ASB-1074-n72m)**
Watts & Herring, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattsherring.com
stan@wattsherring.com
**Attorneys for Plaintiff**


**PLAINTIFF DEMANDS A TRIAL BY JURY IN THIS CAUSE**

_____

**Attorney for Plaintiff**

**Serve defendant via certified mail at the following address:**

Asset Acceptance, LLC
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, Alabama 36104